UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ESTATE OF PAUL NELSON CHAMBERS,<br><br>Plaintiff<br><br>V.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. AND BLUE CARE ELECT PREFERRED PROVIDER PLAN, GROUP NO. 0023055170000,<br><br>Defendants | CIVIL ACTION NO. |

**COMPLAINT**

INTRODUCTION

1. Plaintiff, the Estate of Paul Nelson Chambers ("the Estate of Chambers"), brings this action against the Defendant, Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA"), and Blue Care Elect Preferred Provider Plan, Group No. 0023055170000 ("the Plan") (collectively referred to as "Defendants") for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq. ("ERISA"). Paul Nelson Chambers ("Mr. Chambers") was a beneficiary of an ERISA welfare benefit plan administered and insured by Defendant BCBSMA.

2. Plaintiff challenges Defendants': 1) unreasonable and unlawful denial of Mr. Chambers' claim for continued long term acute care ("LTAC") benefits despite substantial medical evidence demonstrating Mr. Chambers' entitlement to said benefits; 2) pattern of

rejecting and/or ignoring the substantial evidence supporting Mr. Chambers' entitlement to coverage; 3) failure to provide Mr. Chambers with a full and fair review of his claim; and 4) failure to provide a reasonable claims procedure that would yield a decision on the merits of Mr. Chambers' claim.

## JURISDICTION

3. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Defendants' breach of its ERISA obligations took place in this district.

## PARTIES

4. The Plaintiff, the Estate of Chambers, brings this action on behalf of the deceased Mr. Chambers who at the time of his death on February 3, 2018 resided in Plymouth County, Massachusetts. At the time of the treatment, which is the subject of this Complaint, Mr. Chambers was a participant in the Plan, within the meaning of 29 U.S.C. § 1002(2)(7). Plaintiff has standing to bring this action under 29 U.S.C. § 1132(a).

5. The Defendant, BCBSMA, is a for-profit corporation, with its principal place of business at 101 Huntington Avenue, Suite 1300, Boston, MA 02199. BCBSMA was responsible for insuring claims made under the Plan, administering claims under the Plan, and making decisions regarding Plan participants' eligibility for benefits.

6. The Defendant, the Plan, is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1002(1).

7. At all times relevant to the claims asserted in this Complaint, BCBSMA purported to act as an ERISA claims fiduciary with respect to participants of the Plan generally, and specifically with respect to Mr. Chambers, within the meaning of ERISA.

## FACTS

**The Plan.**

8. As a Plan employee, Mr. Chambers was entitled to health insurance coverage under the Plan.

9. For Mr. Chambers' LTAC to be a covered benefit under the Plan, it must be Medically Necessary, defined in the Plan as:

> All health care services must be required services that a health care provider, using prudent clinical judgment, would provide to a patient in order to prevent or to evaluate or to diagnose or to treat an illness, injury, disease, or its symptoms. And, these health care services must also be:
> - Furnished in accordance with the generally accepted standards of professional medical practice (as recognized by the relevant medical community);
> - Clinically appropriate, in terms of type, frequency, extent, site, and duration; and they must be considered effective for your illness, injury, or disease;
> - Consistent with the diagnosis and treatment of your condition in accordance with Blue Cross Blue Shield and Blue Shield medical policies and medical technology assessment criteria;
> - Essential to improve your net health outcome and as beneficial as any established alternatives that are covered by Blue Cross and Blue Shield;
> - Consistent with the level of skilled services that are furnished and furnished in the least intensive type of medical care setting that is required by your medical condition; and
> - Not more costly than an alternative service or sequence of services at least as likely to produce the same therapeutic or diagnostic results to diagnose or treat your illness, injury, or disease.
>
> This does not include a service that: is primarily for your convenience or for the convenience of your family or the health care provider; is furnished solely for your religious preference; promotes athletic achievements or a desired lifestyle; improves your appearance or how you feel about your appearance; or increases or enhances your environmental or personal comfort.

10. The Plan excludes Custodial Care from coverage, defined in the Plan as any of the following:

- Care that is given primarily by medically-trained personnel for a member who shows no significant improvement response despite extended or repeated treatment; or
- Care that is given for a condition that is not likely to improve, even if the member receives attention of medically-trained personnel; or
- Care that is given for the maintenance and monitoring of an established treatment program, when no other aspects of treatment require an acute level of care; or
- Care that is given for the purpose of meeting personal needs which could be provided by persons without medical training, such as assistance with mobility, dressing, bathing, eating and preparation of special diets, and taking medications.

11. The Plan provides unlimited coverage for Medically Necessary LTAC.

12. To determine whether a requested treatment is Medically Necessary, BCBSMA applies the InterQual criteria, based on a clinical assessment of the member's condition, functional status, and treatment needs.

**Mr. Chambers' Claim for LTAC.**

13. On March 23, 2017, Mr. Chambers was admitted to Spaulding Rehabilitation Hospital ("Spaulding") for LTAC.

14. Following Mr. Chambers' admission, BCBSMA began conducting periodic medical necessity reviews of Mr. Chambers' treatment, approximately every one to two weeks, each time finding Mr. Chambers' continued care to be Medically Necessary.

15. On October 12, 2017, BCBSMA denied Mr. Chambers' continued LTAC based on a BCBSMA physician review concluding "[Mr. Chambers] is basically at a custodial level and no longer meets for ongoing long term acute care."

16. Following an appeal, BCBSMA reversed this denial on October 17, 2017, based on a BCBSMA physician review noting "course at LTAC has been long and difficult…

physician's current goal is to get member on night time vent for 8 hours, to progress with [activities of daily living] and mobility. PT and OT now seeing member separately…"

17. On November 22, 2017, BCBSMA again denied Mr. Chambers' claim for continued LTAC based on a BCBSMA physician review, which concluded "the care given is not likely to improve the functional abilities of the member and therefore is considered custodial care. The level of care needed is not at issue, but the goals must be restoring abilities and not maintaining them."

18. On November 27, 2017, Mr. Chambers appealed BCBSMA's denial submitting a treatment narrative from his Spaulding treating physician as well as updated medical records.

19. On November 30, 2017, BCBSMA upheld its denial based on a BCBSMA physician review concluding "the care given is not likely to improve the functional abilities of the member and therefore is considered custodial care… his rehab potential at this point is marginal, basically custodial, PT and OT maintenance."

20. BCBSMA's physician reviewer did not address the detailed medical necessity contentions in Mr. Chambers' treating physician's report, which contradicted BCBSMA's physician reviewer's conclusions.

21. None of the BCBSMA physician reviewers examined Mr. Chambers.

22. On information and belief, BCBMA's termination of benefits was based on inaccurate information generated by BCBSMA regarding Mr. Chambers' condition.

23. On October 16, 2019, the Estate of Chambers timely requested an external review of BCBSMA's denial through the Commonwealth of Massachusetts Office of Patient

Protection, including a highly detailed independent peer review report and Mr. Chambers' complete medical records from Spaulding.

24. On December 13, 2019, BCBSMA's denial was upheld by a physician reviewer contracted with MAXIMUS, a medical review company.

25. In upholding BCBSMA's decision to deny Mr. Chambers' continued LTAC, the MAXIMUS physician reviewer relied on level of care guidelines which are inconsistent with the Plan's definition of Medical Necessity.

26. The MAXIMUS physician did not rely upon the InterQual criteria in rendering his decision.

27. Mr. Chambers and the Estate of Chambers exhausted the internal appeals process provided by BCBSMA prior to filing suit.

**Summary of Defendants' Review of Mr. Chambers' Claim.**

28. Mr. Chambers has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

29. Mr. Chambers' eligibility for benefits is based on the substantial evidence in Defendants' possession.

30. The Defendants failed to respond to Mr. Chambers' and the Estate of Chambers' attempts to engage in a meaningful dialogue regarding the evaluation of his claim.

31. Any discretion to which the Defendants may claim they are entitled under the Plan is negated by their failure to provide Mr. Chambers with explanations as to their adverse actions as proscribed by ERISA and its implementing regulations.

32. The Defendants failed to meet the minimum requirements for the denial of Mr. Chambers' benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a

denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

33. The Defendants have also failed to meet the Plan requirements for review of claims that have been denied.

34. The Defendants failed to provide Mr. Chambers with a full and fair review of his claim for benefits.

35. On appeal, BCBSMA's physician made no attempt to respond to or engage with Mr. Chambers' physician's detailed treatment narrative addressing the elements of medical necessity, as that term is defined by the Plan.

36. The decision to deny Mr. Chambers' benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

37. Due to the unlawful denials of benefits under ERISA, Mr. Chambers and the Estate of Chambers suffered significant financial loss.

38. Having exhausted the administrative procedures provided by the Defendants, the Estate of Chambers now brings this action.

### FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

39. The Estate of Chambers realleges each of the paragraphs above as if fully set forth herein.

40. The Plan is a contract.

41. Mr. Chambers performed all of his obligations under the contract.

42. In particular, Mr. Chambers met all of the conditions for the payment of health insurance benefits under Plan, including but not limited to, providing Defendants proof of the medical necessity of the requested treatment services, pursuant to the terms of his insurance contract. Nonetheless, Defendants have failed to provide Mr. Chambers with the health insurance benefits he is due under the terms of the Plan.

43. 29 U.S.C. § 1132(a)(1)(B) states that:

    A civil action may be brought ---

    1. by a participant or beneficiary –

        1. for the relief provided for in subsection (c) of this section, or

        2. to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

44. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

45. The Defendants unlawfully denied Mr. Chambers' benefits in part by failing to provide Mr. Chambers with a full and fair review of its decision to deny coverage for his claim for continued LTAC.

46. In accordance with 29 U.S.C. §1132, the Estate of Chambers is entitled to coverage for the medical care Mr. Chambers received under the Plan based upon the medical necessity of this treatment.

47. The Defendants refused to provide Mr. Chambers with coverage for the covered medical services received, and are, therefore, in breach of the terms of the Plan and ERISA, which

requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

48. As a direct and proximate result of this breach, Mr. Chambers and the Estate of Chambers lost the principal and the use of the funds expended to pay for the cost of Mr. Chambers' treatment, which should have been paid by Defendants.

49. Mr. Chambers and the Estate of Chambers are entitled to the Massachusetts twelve percent statutory rate of interest due to the loss of the use of the funds expended to pay for Mr. Chambers' medical necessity treatment at Spaulding.

### SECOND CAUSE OF ACTION
### (Attorney's Fees and Costs)
### (ALL DEFENDANTS)

50. The Estate of Chambers realleges each of the paragraphs above as if fully set forth herein.

51. Under the standards applicable to ERISA, the Estate of Chambers deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

52. Defendants have the ability to satisfy the award.

53. The Estate of Chambers' conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

54. The Defendants have acted in bad faith in denying Mr. Chambers' health insurance benefits under the terms of the respective Plan.

55. The award of attorney's fees against the Defendant will deter others acting under similar circumstances.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, the Estate of Mr. Chambers, requests this Court to:

(1) Enter judgment for the Estate of Chambers against Defendants;

(2) Declare, adjudge, and decree that Defendants are obligated to pay the Estate of Chambers for his continued LTAC;

(3) Order that the Defendants make restitution to the Estate of Chambers in the amount of all losses sustained by Mr. Chambers and the Estate of Chambers as a result of the wrongful conduct alleged herein, together with prejudgment interest;

(6) Award twelve percent interest, costs, and attorneys' fees to the Estate of Chambers; and

(7) Award such other relief as this Court deems just and proper.

Date: March 11, 2020

Respectfully submitted,

The Estate of Paul Nelson Chambers
By its attorney,

*/s/ Mala M. Rafik*
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E: mmr@rosenfeld.com