```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
                                    )
ESTATE OF PAUL NELSON CHAMBERS,     )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )   Civil Action
                                    )   No. 20-10492-PBS
BLUE CROSS AND BLUE SHIELD OF       )
MASSACHUSETTS, INC.,                )
                                    )
                    Defendant.      )
_____ )
```

**MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

September 8, 2021

Saris, D.J.

**INTRODUCTION**

The Estate of Paul Nelson Chambers brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., seeking to recover long-term acute care ("LTAC") benefits for the period between November 22, 2017 and January 16, 2018. Its core claim is that Blue Cross Blue Shield of Massachusetts, Inc. ("BCBSMA") abused its discretion when it denied Chambers coverage for this period without engaging in a full and fair review required by ERISA. Before the Court now are the parties' cross-motions for summary judgment. After hearing,

1

the Court **ALLOWS** plaintiff's motion (Dkt. 35) and **DENIES** defendant's motion (Dkt. 39).

## BACKGROUND

### I. The Plan

The Employee Health Benefit Plan in which Chambers was enrolled (the "Plan") generally covers medically necessary LTAC services. It does not, however, provide benefits for custodial care, even where medically necessary. Under the Plan, custodial care includes:

- Care that is given primarily by medically-trained personnel for a member who shows no significant improvement response despite extended or repeated treatment; or
- Care that is given for a condition that is not likely to improve, even if the member receives attention of medically-trained personnel; or
- Care that is given for the maintenance and monitoring of an established treatment program, when no other aspects of treatment require an acute level of care; or
- Care that is given for the purpose of meeting personal needs which could be provided by persons without medical training, such as assistance with mobility, dressing, bathing, eating and preparation of special diets, and taking medications.

Dkt. 40 at 27-28.

To assess medical necessity, BCBSMA applies the InterQual Criteria, which are based on a clinical assessment of the member's condition, functional status, and treatment needs. The parties agree that, for Chambers' claim, the applicable InterQual Criteria subset is the 2017 Respiratory Complex.

**II.  Medical History**

On June 10, 2016, Chambers underwent elective laparoscopic day surgery to remove his gallbladder at Massachusetts General Hospital ("MGH").  Five days later, he returned to MGH, complaining of shortness of breath.  Doctors diagnosed him with sepsis and admitted him to the hospital.  His condition quickly deteriorated into multiorgan system failure, complicated by a host of other issues ranging from gastrointestinal bleeding to pneumonia.

By September 9, 2016, Chambers had improved enough to transfer to Spaulding Rehabilitation Hospital ("Spaulding") for LTAC.  On January 4, 2017, however, Spaulding transferred Chambers back to MGH to address respiratory deterioration and septic shock.

MGH stabilized Chambers' condition, and on March 23, 2017, Chambers returned to Spaulding for LTAC.  Because Chambers was on a ventilator, had a feeding tube, and had limited-to-no activity tolerance, his treatment plan at Spaulding focused on ventilator weaning and interdisciplinary rehabilitation (with care from pulmonary, neurology, cardiology, psychiatry, physiatry, physical therapy, occupational therapy, speech-language therapy, and respiratory therapy).  Chambers made gradual improvements in activity tolerance and respiratory functioning in subsequent months.  He also began eating regular meals, although he still required supplemental nutrition through a feeding tube.

**III. Review Process**

In the wake of Chambers' readmission to Spaulding, BCBSMA began conducting periodic coverage reviews. On August 22, 2017 and October 12, 2017, reviewers (Dr. Bruce Famiglietti and Dr. Richard Lewis, respectively) denied coverage for continuing care. These denials were overturned on appeal.

On November 22, 2017, BCBSMA issued the denial at issue in this case. Dr. Monica Ruehli explained in a letter that, based on the InterQual Criteria:

> We could not approve coverage of this service because you did not meet the medical necessity criteria required for continued coverage of long term acute care hospital stay. This [is] because the care given is not likely to improve your functional abilities. Therefore, this is considered custodial care. The level of care needed is not at issue, but the goals must be restoring abilities and not maintaining them.

Dkt. 40 at 229. Internal BCBSMA notes indicate that Dr. Ruehli relied at least in part on an alleged "failure to vent wean," which she concluded meant Chambers was "presently at baseline respiratory function and getting PT/OT to maintain function." Id. at 216.

Chambers (through his wife) appealed the denial and submitted a letter from Dr. Sorina Ghiran, a primary hospitalist at Spaulding, delineating the ways in which Chambers had improved over time and could improve further with additional treatment. Dr. Lewis, a surgeon (and the same doctor who issued the overturned

denial on October 12), handled the appeal. After reviewing Chambers' medical records and health plan, Dr. Lewis reported:

> This member has been reviewed multiple times since his LTAC admission on 3/20/17. He has been ventilated, is unable to wean, and has had multiple intervening issues while at this LTAC including, pneumonias, UTI, kidney stones, decubiti. He is eating and using G tube for supplementation, out of bed somewhat during the day. His rehab potential at this point is marginal. Basically custodial, PT and OT maintenance. Family has expressed desire to have him home.

Id. at 385. Based on Dr. Lewis' notes, BCBSMA issued a letter to Chambers on November 30, 2017 upholding the denial.

Per the Plan, Chambers appealed the November 30 denial to the Massachusetts Office of Patient Protection ("OPP"), an agency that conducts external reviews of benefits decisions. He submitted an independent review from Dr. Michelle Alpert, M.D., a practicing physiatrist and former medical director at Spaulding, which focused on the InterQual Criteria as well as the Plan.

OPP assigned the case to MAXIMUS, one of the three companies with which it contracts to review benefits claims. MAXIMUS concluded that "the LTAC hospital services provided to the Patient beginning on 12/1/2017 were not medically necessary." Id. at 324. It reasoned that:

> The functional improvement by the Patient had plateaued by 12/01/2017. He continued to receive respiratory care in the form of nebulized breathing treatment, suctioning and trach care. He was tolerating an oral diet with continued tube feeding for augmentation.
>
> . . .

5

> [T]he documentation provided for review did not support that during the time period of 12/01/2017 to the date of discharge on 01/16/2018, he had the need for complex medical treatment, such as multiple and prolonged intravenous therapies, or monitoring of significantly medically active conditions requiring clinical assessment 6 or more times a day.  There was also no documentation provided for review that indicated the Patient required multiple and frequent interventions of at least 6 or more times a day, such as ventilator management, cardiac monitoring, complex wound care for multiple wounds stages 3 and above, or the need for specialized, high technology equipment such as cardiac monitors, on-site dialysis, or surgical suites.
>
> . . .
>
> [T]he Patient did not require services at the LTACH which were not available at a skilled nursing facility.  The requested treatments were not medically necessary at the LTACH level of care.  The Patient had been medically stable and could have received further care at a lower level of care.

Id. at 326-27.  MAXIMUS relied on the MCG General Recovery 20th Edition Long-Term Acute Care Hospital (LTACH) Level of Care Guideline: GRG: GRG-050 (MRG).  Neither the InterQual Criteria nor the MCG set of criteria was submitted to the Court.

## DISCUSSION

### I. Legal Standard

A motion for summary judgment in the ERISA context "is simply a mechanism for" deciding the case on the merits. Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc., 852 F.3d 105, 110 s(1st Cir. 2017).  The Court "sits more as an appellate tribunal than as a trial court and must evaluate the reasonableness

6

of an administrative determination in light of the record compiled before the plan fiduciary." Hatfield v. Blue Cross & Blue Shield of Massachusetts, Inc., 162 F. Supp. 3d 24, 34 (D. Mass. 2016) (cleaned up).

As a default rule, "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard." Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)) (alteration in original).  However, where, as here, "the Plan contains a clause plainly reserving to [the insurer] discretionary interpretation authority,"[1] the Court must defer to the deciding entity's "reasonable reading of the Plan unless [its] decision to deny a benefits claim was arbitrary and capricious." Lavery v. Restoration Hardware Long Term Disability Benefits Plan, 937 F.3d 71, 78 (1st Cir. 2019).  The arbitrary and capricious standard "asks whether a plan administrator's determination is plausible in light of the record as a whole, or, put another way, whether the decision is supported by substantial evidence in the record." Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 61 (1st Cir. 2013) (cleaned up).  The burden of demonstrating that an exclusion bars coverage falls on BCBSMA.

---

[1] Plaintiff does not dispute that the Plan confers discretionary interpretation authority on BCBSMA.

See Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 131 (1st Cir. 2004).

## II. Analysis

### A. Procedural Flaws

Plaintiff argues that the review process employed in this case violated ERISA § 503, which requires (1) "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and (2) "reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. After reviewing the record and the parties' arguments, the Court agrees that the review process suffered from several significant flaws.

First, use of the reviewers employed by BCBSMA undermined the fairness of the review process. The Plan states that "[t]he professionals who will review your appeal or grievance will be different from those who participated in Blue Cross and Blue Shield's prior decisions regarding the subject of your review, nor will they work for anyone who did." Dkt. 40 at 95. By its plain text, this provision requires that a doctor who did not participate in prior decisions on the case handle any appeal of a coverage denial. Compare id. (requiring the reviewer on appeal to be an individual "different from those who participated in Blue Cross

8

and Blue Shield's prior decision<u>s</u> regarding the subject of your <u>review</u>" (emphases added)), <u>with</u> 29 C.F.R. 2560.503-1(h)(3)(v) (requiring the reviewer on appeal to "be an individual who is neither an individual who was consulted in connection with <u>the adverse benefit determination that is the subject of the appeal</u>" (emphases added)). Here, however, the doctor reviewing the appeal – Dr. Lewis – had, in fact, participated in prior decisions "regarding the subject of [the] review," <u>i.e.</u>, coverage of LTAC services for Chambers. Dkt. 40 at 95. Indeed, he had previously issued denials of coverage that were overturned on appeal. Under the Plan terms, it was inappropriate for BCBSMA to appoint him as the appeals reviewer.

Second Plaintiff did not receive adequate notice of the reasons for the denial or a full and fair opportunity for review. BCBSMA had "denied coverage" on the basis that LTAC services were "considered custodial care." Dkt. 40 at 290. BCBSMA's letter says that BCBSMA did "not question the medical necessity of the service." <u>Id.</u> MAXIMUS, on the other hand, upheld the denial of coverage on the ground "that the LTAC hospital services provided to the Patient beginning on 12/1/2017 were <u>not medically necessary</u>." Id. at 324 (emphasis added); <u>see also</u> <u>id.</u> at 326-27. It did not address the custodial care exception or the likelihood of future improvement (despite noting in passing that "[t]he functional improvement by the Patient had plateaued by

9

12/01/2017," see id. at 326). MAXIMUS's use of a rationale based primarily on a "medically necessary" standard rather than likelihood of improvement undermines the purpose of the ERISA § 503, which is "to notify the claimant of what he or she will need to do to effectively make out a benefits claim and to take an administrative appeal from a denial.'" Hatfield, 162 F. Supp. 3d at 40 (quoting Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 239 (1st Cir. 2006)); accord Dkt. 44 at 16 (acknowledging this purpose).

The Court also finds it significant that MAXIMUS applied a different set of criteria to assess medical necessity than the set used by BCBSMA in the underlying decisions – the MCG General Recovery Care 20th Edition Long-Term Acute Care Hospital (LTACH) Level of Care Guideline: GRG: GRG-050 rather than the InterQual Criteria. See Stephanie C., 852 F.3d at 114 (pointing out that Blue Cross Blue Shield reviewers reasonably consult the InterQual Criteria, "nationally recognized, third-party guidelines" in its decision-making). MAXIMUS stated that it had reviewed the relevant InterQual Criteria, but it did not substantively apply the InterQual Criteria in its analysis. "The use of incorrect or inconsistent criteria . . . poses procedural problems related to notice." See Hatfield, 162 F. Supp. 3d at 40. For this reason, the Court holds that plaintiff did not have reasonable opportunity for a full and fair review of BCBSMA's decision given the shift in standard.

**B. Prejudice**

The mere existence of procedural violations does not, in and of itself, warrant remedy under ERISA. "A showing of prejudice is [also] required." Id. at 42. "To show prejudice, a claimant need not prove that a different outcome would have resulted had the administrator followed the required procedures" but instead need only demonstrate that "correct notice would have made a difference." Id. (cleaned up).

The procedural violations at issue in this case are significant enough to have caused prejudice to plaintiff. Plaintiff has cited copious evidence supporting the potential for functional improvement. See, e.g., Dkt. 40 at 157 (reporting on November 20, 2017 that Chambers "continues to make slow, steady gains" as); id. at 169 (reporting on November 18, 2017 that Chambers is "slowly improving"); id. at 239-41 (describing Chambers' improvements over time); Dkt. 42 at 27-30 (same); Dkt. 43 at 624 (reporting on November 21, 2017 that "Paul Chambers has made Good progress in PT this week"). In contrast, BCBSMA has not cited any treatment notes to support the exclusion. It instead relies exclusively on the opinions of the reviewers. The issue on appeal of Dr. Lewis, who had previously denied coverage to Chambers and been reversed, plausibly could have made a difference in the outcome. The same holds true of the use of Dr. Ruehli, an OB/GYN who did not have the qualifications to adequately assess Chambers'

11

complex medical condition, during the initial review phase. See 29 C.F.R. 2560.503-1(h)(3)(iii) (noting that, in deciding claims involving a "medical judgment," a "fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment"). At the very least, the participation of the Dr. Lewis and Dr. Ruehli puts in doubt the integrity of BCBS's decision-making process. Buffonge v. Prudential Ins. Co. Of Am., 426 F.3d 20, 31 (1st Cir. 2005).

Plaintiff, moreover, had no reason to expect medical necessity to be in dispute on appeal under the MRG Guidelines. The key issue should have been whether Chambers showed "significant improvement" or was "likely to improve," not whether continued care at Spaulding was medically necessary. The use of the wrong standard in MAXIMUS's review created a significant notice issue and deprived Plaintiff of the opportunity to fully and fairly challenge the denial of benefits.

### C. Remedy

The preferred remedy for procedural violations is remand. See Hatfield, 162 F. Supp. 3d at 43 ("[R]emand is particularly appropriate, although not required, in a case like this one; a substantive remedy is poorly tailored to a procedural violation."). The Court, however, also has the discretion to

substantively award benefits in appropriate cases. See Buffonge, 426 F.3d at 31.

Because the consequence of the procedural violations (use of improper regulations and wrong standards) at issue in this case is that review process did not provide plaintiff with full and fair opportunity to challenge the denial, the proper solution is to send the case back to BCBSMA to begin the review process anew. The Court accordingly opts to remand the case back to BCBSMA.

## ORDER

For the reasons stated above, plaintiff's motion for summary judgment (Dkt. 35) is **ALLOWED** and defendant's motion for summary judgment (Dkt. 39) is **DENIED**. The Clerk will enter judgment in favor of plaintiff.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge